Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/08/2019 08:08 AM CST

- 188 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

State of Nebraska ex rel. Counsel for Discipline
of the Nebraska Supreme Court, relator,
v. Jeremy C. Jorgenson, respondent.
___ N.W.2d ___

Filed February 8, 2019.    No. S-17-1028.

1. **Disciplinary Proceedings: Appeal and Error.** Because attorney discipline cases are original proceedings before the Nebraska Supreme Court, the court reviews a referee's recommendations de novo on the record, reaching a conclusion independent of the referee's findings.

2. **Disciplinary Proceedings.** The basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the appropriate discipline evaluated under the particular facts and circumstances of the case.

3. ____. To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, the Nebraska Supreme Court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.

4. ____. For purposes of determining the proper discipline of an attorney, the Nebraska Supreme Court considers the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors.

5. **Judgments: Records: Judicial Notice.** A court has the right to examine its own records and take judicial notice of its own proceedings and judgments in a former action.

6. **Disciplinary Proceedings.** The Nebraska Supreme Court has generally, but not always, disbarred attorneys who continue to practice law despite their suspensions.

7. ____. Repeatedly ignoring requests for information from the Counsel for Discipline indicates a disrespect for the Nebraska Supreme Court's

- 189 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

disciplinary jurisdiction and a lack of concern for the protection of the public, the profession, and the administration of justice.

8. ____. The Nebraska Supreme Court considers an attorney's failure to respond to inquiries and requests for information from the Counsel for Discipline as an important matter and as a threat to the credibility of attorney disciplinary proceedings.

9. ____. A history of violating disciplinary rules and a history of failing to communicate with clients, courts, and the Counsel for Discipline represent a pattern of noncompliance with disciplinary rules, and cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions.

10. ____. Cumulative acts of attorney misconduct can, and often do, lead to disbarment.

11. ____. Remorse is a mitigating factor when considering the appropriate sanction in an attorney disciplinary proceeding.

12. **Disciplinary Proceedings: Proof.** To establish depression as a mitigating factor in a proceeding to discipline an attorney, the attorney is required to show (1) medical evidence that he or she is affected by depression, (2) that depression was a direct and substantial contributing cause to the misconduct, and (3) that treatment of the depression will substantially reduce the risk of further misconduct.

13. ____: ____. The Nebraska Supreme Court will apply the issue of substance abuse as a mitigating factor in an attorney disciplinary proceeding only after the attorney presents evidence that he or she acknowledges the condition, voluntarily seeks treatment, and terminates use of the substance.

14. **Disciplinary Proceedings.** The purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether it is in the public interest that an attorney be permitted to practice, which question includes considerations of the protection of the public.

15. ____. The propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.

Original action. Judgment of disbarment.

Julie L. Agena, Assistant Counsel for Discipline, for relator.

No appearance for respondent.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

- 190 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

Per Curiam.

This is an attorney discipline case against Jeremy C. Jorgenson stemming from violations occurring after Jorgenson was administratively suspended from the practice of law in Nebraska for failing to satisfy mandatory continuing legal education (MCLE) reporting requirements. Formal charges were filed against Jorgenson, claiming violations of Neb. Ct. R. § 3-316 (rev. 2014) (notification requirements by disbarred or suspended members) and Neb. Ct. R. of Prof. Cond. §§ 3-501.4 (communications), 3-501.16 (declining or terminating representation), 3-505.5 (rev. 2012) (unauthorized practice of law), 3-508.1 (bar admission and disciplinary matters), and 3-508.4 (rev. 2016) (misconduct), as well as his oath of office as an attorney as provided by Neb. Rev. Stat. § 7-104 (Reissue 2012). Jorgenson admitted the charges, a judgment on the pleadings was entered, and a hearing on the question of appropriate sanctions was held before an appointed referee. The referee's report following this hearing recommended Jorgenson be disbarred. Upon our de novo review and for the reasons set forth herein, we agree with the referee's recommendation and conclude that disbarment is the proper sanction.

## BACKGROUND

Jorgenson was admitted to the practice of law in Nebraska on April 15, 2008. At all relevant times, he was engaged in the practice of law in Nebraska. Between December 2016 and July 2017, Jorgenson was also practicing law in Illinois, where he had moved. In July, Jorgenson apparently moved back to Nebraska but has failed to provide updated contact information to the Attorney Services Division or the Counsel for Discipline since that time.

### Previous Disciplinary Actions

Jorgenson has previously been the subject of two disciplinary cases and one administrative suspension in Nebraska. In the first action in October 2012, Jorgenson received a public reprimand and was placed on probation for 1 year due to a

- 191 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

violation relating to contingent fee agreements.[1] In the second action, Jorgenson was disciplined for failing to provide competent and diligent representation to a client when he failed to appear for oral arguments at the U.S. Court of Appeals for the Eighth Circuit, failed to adequately supervise his support staff, and failed to timely respond to demands for information from the Counsel for Discipline.[2] In that case, Jorgenson was indefinitely suspended in February 2018 from the practice of law in Nebraska, with a minimum suspension of 2 years. Finally, and relevant to the present violations, Jorgenson was the subject of an administrative suspension commencing June 14, 2017, for failure to fulfill his MCLE requirements for 2016. Although Jorgenson testified in the present case that he completed his MCLE for 2016, no substantive evidence regarding completion of those requirements was submitted.

### FORMAL CHARGES

In the present action, Jorgenson admitted to all the allegations within the formal charges with the exception of one sentence, which was subsequently withdrawn. Therefore, the facts alleged are uncontested and may be taken as true.

The amended formal charges contain five counts. Count I alleges Jorgenson continued to practice law by filing pleadings for a client in Douglas County Court after his administrative suspension. These pleadings included a "Plea of Not Guilty/ Waiver of Appearance/Appearance of Counsel" on the client's behalf on July 7, 2017. Jorgenson failed to notify this client in writing that he had been suspended, failed to assist the client with obtaining new representation, and failed to promptly refund all client funds and provide a full accounting. These failures continued after he was contacted by the client's new counsel in early August.

---

[1] *State ex rel. Counsel for Dis. v. Jorgenson*, 284 Neb. 507, 822 N.W.2d 367 (2012).

[2] *State ex rel. Counsel for Dis. v. Jorgenson*, 298 Neb. 855, 906 N.W.2d 43 (2018).

- 192 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

Count II alleges that during his administrative suspension, Jorgenson represented a client in a criminal matter in Merrick County District Court who had entered a guilty plea and was scheduled to be sentenced on August 7, 2017. Jorgenson failed to attend the sentencing hearing and notified the client by text message on the morning of the hearing that he was suspended. Jorgenson failed to notify the client in writing that his license had been suspended, failed to assist the client in obtaining new representation, and failed to file an affidavit with this court to attest his compliance with § 3-316 of the disciplinary rules.

Count III alleges that Jorgenson failed to cooperate with the formal investigation conducted by the Counsel for Discipline into the matters involving his representation of clients after his administrative suspension.

Count IV alleges that Jorgenson was hired in November 2016 to represent an individual in a legal matter for which Jorgenson was paid $1,500. Jorgenson failed to notify his client about his administrative suspension and failed to appear for a scheduled court appearance on July 11, 2017. Additionally, Jorgenson failed to notify his client in writing that he was suspended, failed to assist his client in obtaining new representation, failed to promptly refund all client funds and provide a full accounting, failed to file an affidavit with this court to attest his compliance with § 3-316, and failed to cooperate with the formal investigation conducted by the Counsel for Discipline and provide any of the requested information.

Count V alleges that after Jorgenson's administrative suspension, he continued to email attorneys and other individuals using a signature block on emails which purported he was a part of a law partnership in Omaha, Nebraska.

### Discipline Hearing Before Referee

At the hearing before the referee, three exhibits were submitted and testimony was taken. Exhibit 1 was a copy of the June 14, 2017, letter from this court advising Jorgenson that he was suspended from the practice of law for failure to satisfy

the MCLE reporting requirements for 2016. Exhibit 2 was a copy of the 2012 disciplinary opinion.[3] Exhibit 3 was a copy of the 2018 disciplinary opinion.[4] Jorgenson was the only witness called to testify, and he was called to do so by the Counsel for Discipline.

During his testimony, Jorgenson addressed various aspects of the admitted allegations from the amended formal charges. First, Jorgenson testified about when he received notice that he was administratively suspended and stated that "there was a gap between my suspension [on June 14, 2017,] and me having knowledge of it, and, yes, during that gap, there were things that I was filing." On this subject, Jorgenson also responded to questioning from the Counsel for Discipline that he had learned his license was administratively suspended "[s]hortly before" he talked to the Counsel for Discipline on the telephone, which occurred "somewhere right around the 4th of July weekend, maybe after the 4th or 6th of July [in 2017]."

Jorgenson also testified to his remorse and embarrassment for the violations. Jorgenson testified that his life was in disarray both personally and professionally after being involved in a highly publicized murder trial and his decision to thereafter move to Illinois. Additionally, Jorgenson was undergoing marital discord when his wife moved to another state with their children, precipitating an ensuing custody battle. Jorgenson testified that he was severely depressed and drinking "a lot," which attributed to the acts and omissions leading to the violations. When asked about how he is addressing the depression and alcohol issues, Jorgenson responded:

> A. Yeah, I . . . have not been drinking since [my son] broke his arm, which is — I'm not really afraid to talk about it at all, to be honest with you, I — you know, what happened was an accident. You know, the Juvenile Court system, the social workers, the visitation workers,

---

[3] See *Jorgenson, supra* note 1.

[4] See *Jorgenson, supra* note 2.

- 194 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

the caseworkers, every — everyone believes that this is a substance abuse case, alcohol, primarily, for me . . . not a child abuse case. But since that happened, I've been sober. Since that happened, I've been attending AA, not — you know, hit-and-miss a little bit. I think it's just sort of my personality, it's hard, AA is tough for me because I just can decide to do or not do something. . . . I have a diagnostic assessment for both chemical dependency and mental health, which recommended outpatient, so group meetings, and then individual therapy. I'm doing some individual therapy. . . .

Q. So, for the alcohol problem that you've admitted that you have, you've stopped drinking, you're going to some AA meetings. Have you gotten any treatment, or is it — that's the therapy for mental health, or is it for both?

A. So the, the — there is a group meeting component, which deals with the substance abuse.

Q. So it's more dual diagnosis then?

A. Yeah, yeah, I mean . . . when I went to the evaluation, I was as honest as I'm being here, that, you know, I don't think I had ever admitted — I didn't think I had a drinking problem, you know? I mean, I — I've been, like, a daily drinker for a very long time, but never a lot, you know, I mean, until [these issues with my wife], and, and I didn't even really recognize it myself, but I started progressing — or drinking more and more, and, at some point, you know, I'm waking up and drinking and, and it still didn't occur to me that, I thought, like, well, this is how you can make the anxiety go away and — looking back, it's kind of a blur, it was obviously a problem. So, yeah, the group meetings address that.

Jorgenson also addressed his failure to repay client funds and indicated he intends to do so.

### REFEREE'S REPORT AND RECOMMENDATION

After the hearing, the referee issued a report and recommendation. The report first noted that any delay in Jorgenson's

- 195 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

finding out about his administrative suspension was likely
due, in part, to having failed in his obligation under Neb. Ct.
R. § 3-803(C) (rev. 2019) to notify the court of any change
in address, telephone number, or email. The report also noted
Jorgenson's testimony that he had knowledge of the suspension
prior to a call with the Counsel for Discipline which occurred
before July 6, 2017, meant such knowledge would have pre-
dated his filing of pleadings under count I, the sentencing
hearing scheduled in count II, and the hearing scheduled in
count IV.

The referee's report analyzed the seriousness of Jorgenson's
offenses, the history of his previous violations, the needs of
his clients, and the effect on the reputation of the bar. The
report found the sole mitigating factor which can be recognized
was Jorgenson's remorse during the hearing. While the report
discussed Jorgenson's experience with depression and abuse
of alcohol, it determined that there was insufficient evidence
in the record to support the use of such issues for mitiga-
tion purposes.

In consideration of such analysis and after comparing these
facts to previous, similar disciplinary cases, the report recom-
mended disbarment.

The only question before this court is the appropriate
discipline.

## STANDARD OF REVIEW

[1] Because attorney discipline cases are original proceed-
ings before this court, we review a referee's recommendations
de novo on the record, reaching a conclusion independent of
the referee's findings.[5]

## ANALYSIS

[2] The basic issues in a disciplinary proceeding against an
attorney are whether discipline should be imposed and, if so,

---

[5] *State ex rel. Counsel for Dis. v. Trembly*, 300 Neb. 195, 912 N.W.2d 764
(2018).

- 196 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

the appropriate discipline evaluated under the particular facts and circumstances of the case.[6] Because Jorgenson admitted the allegations contained within the formal charges and because violations of the disciplinary rules concerning the practice of law are grounds for discipline,[7] we find discipline should be imposed and now turn to the question of the appropriate sanction.

[3,4] Under Neb. Ct. R. § 3-304, this court may impose one or more of the following disciplinary sanctions: disbarment; suspension; probation in lieu of or subsequent to suspension, on such terms as the court may designate; censure and reprimand; or temporary suspension. To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law.[8] For purposes of determining the proper discipline of an attorney, we consider the attorney's actions both underlying the events of the case and throughout the proceeding, as well as any aggravating or mitigating factors.[9]

[5] This matter represents the third disciplinary case in Nebraska to which Jorgenson has been a party. A court has the right to examine its own records and take judicial notice of its own proceedings and judgments in a former action.[10] Thus, in addition to the current formal charges, in our de novo review, we consider the relevant facts from Jorgenson's

---

[6] *Id.*

[7] See *id*.

[8] *Id.*

[9] *Id.*

[10] *State ex rel. Counsel for Dis. v. Gast*, 298 Neb. 203, 903 N.W.2d 259 (2017).

- 197 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

previous disciplinary proceedings as well as the aggravating nature of his previous disciplinary offenses.[11]

[6] The facts alleged in the formal charges of this case and admitted to by Jorgenson display an ongoing neglect of Jorgenson's duties to his clients and the judiciary. After admitting he received notice that he was administratively suspended, Jorgenson continued to practice law in violation of the suspension, failed to adequately notify clients that he could no longer represent them, failed to assist clients in obtaining new representation, failed to return client funds and provide an accounting thereof, held himself out as a member of a law firm in emails, and made filings on behalf of clients in court. On two specific occasions, under counts II and IV, Jorgenson failed to attend hearings which had been scheduled in his clients' cases. Under count III, he notified his client of the suspension through a simple text message the day of the client's sentencing hearing, with inadequate time to obtain new representation, and under count IV, he completely failed to inform his client of the suspension. Such lack of communication and his continuance to act as a licensed attorney put his clients at a disadvantage in their cases and prevented them from obtaining alternative representation or making other arrangements to address their legal needs. We have generally, but not always, disbarred attorneys who continue to practice law despite their suspensions.[12]

[7,8] In addition, Jorgenson has repeatedly failed to cooperate with the Counsel for Discipline. Repeatedly ignoring requests for information from the Counsel for Discipline indicates a disrespect for our disciplinary jurisdiction and a lack of concern for the protection of the public, the profession, and

---

[11] See *id*.

[12] See, e.g., *State ex rel. Counsel for Dis. v. Walocha*, 283 Neb. 474, 811 N.W.2d 174 (2012); *State ex rel. Counsel for Dis. v. Carbullido*, 278 Neb. 721, 773 N.W.2d 141 (2009). But see *State ex rel. Counsel for Dis. v. Frye*, 278 Neb. 527, 771 N.W.2d 571 (2009).

- 198 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

the administration of justice.[13] We consider an attorney's failure to respond to inquiries and requests for information from the Counsel for Discipline as an important matter and as a threat to the credibility of attorney disciplinary proceedings.[14]

[9,10] As demonstrated by the admitted facts and the two previous disciplinary cases and administrative suspension, Jorgenson has a history of violating disciplinary rules and a history of failing to communicate with clients, courts, and the Counsel for Discipline. As we explained in Jorgenson's 2018 disciplinary case, this history represents a pattern of noncompliance with our disciplinary rules, and cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions.[15] Cumulative acts of attorney misconduct can, and often do, lead to disbarment.[16]

[11] We note Jorgenson appeared remorseful during the hearing before the referee and displayed a hope to improve his condition. Such remorse is a mitigating factor when considering the appropriate sanction.[17] However, Jorgenson also admits that at present, he is unfit for the practice of law.

[12,13] We also note Jorgenson testified to depression and alcohol abuse issues arising from his participation in a large criminal trial, his move to Illinois, and marital discord. To establish depression as a mitigating factor, Jorgenson was required to show (1) medical evidence that he is affected by depression, (2) that depression was a direct and substantial contributing cause to the misconduct, and (3) that treatment of the depression will substantially reduce the risk of further

---

[13] See *Gast, supra* note 10.

[14] See *State ex rel. Counsel for Dis. v. Wickenkamp*, 277 Neb. 16, 759 N.W.2d 492 (2009).

[15] See *Jorgenson, supra* note 2.

[16] *State ex rel. Counsel for Dis. v. Switzer*, 280 Neb. 815, 790 N.W.2d 433 (2010).

[17] *Id.*

- 199 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

misconduct.[18] We have previously applied the issue of substance abuse as a mitigating factor only after the attorney presented evidence that he or she has acknowledged the condition, voluntarily sought treatment, and terminated use of the substance.[19] Specifically, in *State ex rel. NSBA v. Pullen*,[20] we considered the attorney's substance abuse as a mitigating factor after the attorney presented evidence that he had entered into a contract with the monitoring program of the Nebraska Lawyers Assistance Program whereby he agreed to that program's monitoring of his recovery from alcohol addiction.

Jorgenson did not present any evidence beyond his own testimony that he had depression and alcohol abuse issues and that he participated in group meetings. There was no medical evidence presented that Jorgenson suffered from depression, and there was no evidence presented that the depression was a direct and substantial contributing cause of his misconduct and that its treatment would substantially reduce the risk of further misconduct. Similarly, Jorgenson did not present any supporting evidence to establish that his use of alcohol was a direct and substantial contributing cause of his misconduct and that he is participating in treatment and ceased abusing alcohol so as not to make it an issue going forward.

[14] The purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether it is in the public interest that an attorney be permitted to practice, which question includes considerations of the protection of the public.[21] Because Jorgenson did not provide adequate evidence of his depression and substance abuse issues and offered no evidence that the treatment of his alleged conditions is sufficient to protect the public, we do not

---

[18] *State ex rel. Counsel for Dis. v. Thompson*, 264 Neb. 831, 652 N.W.2d 593 (2002).

[19] See *State ex rel. NSBA v. Pullen*, 260 Neb. 125, 615 N.W.2d 474 (2000).

[20] *Id.*

[21] See, *Switzer, supra* note 16; *Pullen, supra* note 19.

- 200 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
STATE EX REL. COUNSEL FOR DIS. v. JORGENSON
Cite as 302 Neb. 188

consider these conditions as mitigating factors in deciding the appropriate sanction.

[15] The propriety of a sanction must be considered with reference to the sanctions imposed in prior similar cases.[22] The present action is similar to our opinions in *State ex rel. Counsel for Dis. v. Carbullido*[23] and *State ex rel. Counsel for Dis. v. Switzer*.[24]

In *Carbullido*, the attorney had been a party to previous disciplinary actions, engaged in the unauthorized practice of law after her license was suspended, and was convicted of several driving under the influence and driving with a suspended license offenses. The attorney failed to respond to requests for information from the Counsel for Discipline, failed to respond to the formal charges, and failed to file a brief with this court. Noting the cumulative nature of her offenses, her disregard for previous suspensions, and her nonparticipation with the disciplinary proceedings, we disbarred the attorney.[25]

Similarly, in *Switzer*, the attorney continued to practice law after being suspended for an earlier violation. The attorney had been a party to previous disciplinary actions. During his hearing, the attorney appeared remorseful and explained that part of the cause of his misconduct extended from issues with depression. Although we accepted, "for the sake of argument," the attorney's depression as having satisfied the test for establishing depression as a mitigating factor, we nonetheless disbarred him.[26] In doing so, we stated:

> We previously suspended [the attorney], but he continued to practice, flouting our previous ruling. A suspension order is a command, not a suggestion. The offenses

---

[22] See *id.*

[23] *Carbullido, supra* note 12.

[24] *Switzer, supra* note 16.

[25] *Carbullido, supra* note 12.

[26] See *Switzer, supra* note 16, 280 Neb. at 824, 790 N.W.2d at 441, citing *Thompson, supra* note 18.

admitted are serious, and the need to deter others from this type of conduct weighs heavily. If attorneys ignore our suspension orders without consequence, it undermines the authority of this court.[27]

The reasoning used in these cases is applicable here. Jorgenson's violations undermine the public's confidence in the bar and its members to be dependable and capable in the representation of clients, to provide competent legal advice, and to participate in a judicial system reliant upon respect for the law. Moreover, these violations harm clients by failing to provide adequate representation and advice, leaving those clients without the opportunity to obtain competent representation, failing to use funds for the purposes for which the clients provided them, and failing to account for those funds. These issues are compounded when considering them in conjunction with Jorgenson's previous violations. We determine that the only appropriate discipline is disbarment.

## CONCLUSION

We adopt the referee's recommendation. We find that Jorgenson violated his oath of office as an attorney and § 3-316 of the disciplinary rules and §§ 3-501.4, 3-501.16, 3-505.5, 3-508.1, and 3-508.4 of the rules of professional conduct. It is the judgment of this court that Jorgenson be disbarred from the practice of law in the State of Nebraska effective immediately. Jorgenson is directed to comply with § 3-316, and upon failure to do so, he shall be subject to punishment for contempt of this court. Jorgenson is further directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 2012) and Neb. Ct. R. §§ 3-310(P) (rev. 2014) and 3-323 within 60 days after an order imposing costs and expenses, if any, is entered by the court.

JUDGMENT OF DISBARMENT.

---

[27] *Id*. at 825, 790 N.W.2d at 441.